IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VERTRON L., § § § Plaintiff, § § V. § No. 3:20-cv-1146-M-BN § KILOLO KIJAKAZI, Acting § Commissioner of Social Security, § § Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. *See* Dkt. No. 4.

Plaintiff Vertron L. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that he is disabled as a result of depression, anxiety, and persistent spasms and lower back and leg pain resulting from a work injury that occurred on January 17, 2008, the alleged date of onset. *See* Dkt. No. 23 at 8. After his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits were denied following a series of administrative hearings, appeals, and remand to the administrative law judge ("ALJ") for further development

1

and consideration of the record, Plaintiff requested another hearing before an ALJ. *See* Dkt. No. 23 at 8. That hearing was held on June 6, 2019. *See* Dkt. No. 23 at 8-9. At the time of the hearing, Plaintiff was 49 years old. *See* Dkt. No. 23 at 19. He has an eleventh-grade high school education and past work experience as a music mixer, disc jockey, pest control worker, mail clerk, and cashier II. *See* Dkt. No. 23 at 19. Plaintiff has not engaged in substantial gainful activity since January 17, 2008. *See* Dkt. No. 23 at 19.

On remand, the ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See* Dkt. No. 23 at 19-20. Although the ALJ concluded that the medical evidence established that Plaintiff suffered from "degenerative disc disease of the lumbar spine and laminectomy, degenerative disc disease of the cervical spine, chronic pain syndrome, obesity, depression and anxiety," the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See* Dkt. No. 23 at 19-20. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work but could not return to his past relevant employment. *See* Dkt. No. 23 at 20. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a table worker, final assembler, and document preparer – jobs that the ALJ determined through the VE's testimony exist in significant numbers in the national economy. *See* Dkt. No. 23 at 20.

Plaintiff appealed that decision to the Appeals Council, which denied his request for review on March 8, 2020. *See* Dkt. No. 23 at 20. Plaintiff then filed this

2

action in federal district court, challenging the hearing decision on three grounds: (1) the ALJ erred by failing to consider Plaintiff's intellectual functioning deficit at step two and step three; (2) the assessment of his mental FRC is not supported by substantial evidence; and (3) the ALJ's finding that Plaintiff can perform other work in the national economy is not supported by substantial evidence.

For the reasons discussed below, the undersigned recommends that the hearing decision be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire

3

record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant

can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* But the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way,

5

Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff specifically contends that the ALJ erred by (1) failing to consider the severity and impact of his intellectual functioning deficit; (2) impermissibly disregarding medical opinion evidence in determining his mental RFC; and (3) improperly relying on testimony of a vocational expert in finding jobs existed in the national economy that Plaintiff could perform.

### I. The ALJ's step two error mandates reversal

Plaintiff argues that the ALJ committed legal error in her analysis by failing to determine the severity of Plaintiff's intellectual functioning deficit at step two of the sequential analysis and further failing to consider the effect of his intellectual deficit at step three. The undersigned agrees.

In *Herrera v. Commissioner of Social Security*, on which Plaintiff relies, the United States Court of Appeals for the Fifth Circuit confirmed that, as part of the step two analysis, the ALJ must determine whether any identified impairments are "severe" or "not severe." 406 F. App'x 899, 903 (5th Cir. 2010). This includes impairments the claimant explicitly alleges as well as those supported by the record. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).

While Plaintiff initially alleged depression and anxiety as his only mental impairments, the record included the results of a consultive examination showing Plaintiff's IQ to be 59 on the WAIS-IV scale, along with a provisional diagnosis of

6

mild intellectual disability. The doctor who performed the consultive examination also diagnosed Plaintiff with depressive disorder and (provisionally) with sleep apnea. But, while the ALJ mentioned the results of the consultive examination, including the IQ test, and conducted a severity determination for anxiety and depression (finding them medically determinable and severe) and for sleep apnea (finding it not medically determinable), she conducted no explicit step two analysis for Plaintiff's documented intellectual functioning deficit and did not explain why she declined to do so.

"Under the regulations, an individual with a valid verbal, performance, or full-scale I.Q. of fifty-nine or less meets a listed impairment and is entitled to disability benefits." *Pierre*, 884 F.2d at 803 (citing C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B)). Where the record indicated a presumptive mental impairment, the ALJ should have considered at step two whether Plaintiff's intellectual functioning deficit was a medically determinable condition and, if so, its severity. *See Henson v. Barnhart*, 373 F. Supp. 2d 674, 682 (E.D. Tex. 2005) ("The Commissioner unquestionably must consider all potential impairments"); *see also Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

Having determined that the ALJ erred in failing to consider the severity of an identified mental impairment at step two, the Court must still determine whether this error was harmless. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). "'Procedural perfection in administrative proceedings is not required'" as long as "'the substantial rights of a

party have not been affected.'" *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). For example, a failure to explicitly consider the severity of an impairment might not mandate reversal where the ALJ's decision does not turn on a finding of no disability at step two and where the ALJ subsequently discusses and accounts for the impact of the mental impairment in later steps. *See Herrera*, 406 F. App'x at 903 (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis), and *Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.")).

But such an error is not harmless, even if the analysis continues beyond step two, if the ALJ fails to apply the severity analysis to an identified impairment and, based on that error, proceeds to the later steps of the sequential analysis only as to the other claimed impairments. *See Jones v. Astrue*, 821 F.Supp.2d 842, 850 (N.D. Tex. 2011).

At step two, the ALJ noted that Plaintiff "had a mental health evaluation, which showed that [he] had extreme loss of function with some isolation" and that he "had a global assessment of function (GAF) score of 41, with moderate stressors [] and a severe level of depressive symptoms." Dkt. No. 21-1, at 1083. The ALJ also acknowledged the results of the consultive examination, wherein "his level of intelligence appeared to be below average. Weshler Adult Intelligence Scale, Fourth Edition (WAIS-IV) testing revealed his spelling, math computation, and word reading

8

levels were at the second grade level." *Id*. at 1088. But the ALJ also noted an evaluation where Plaintiff's "memory and concentration appeared grossly intact," "his IQ was average," and "[h]is insight and judgment was good." *Id*. at 1083.

The ALJ appeared to make some reference to Plaintiff's mental health records during her step two analysis, and these factual notations could suggest that the ALJ applied the severity test to Plaintiff's intellectual functioning limitations and determined they were either not medically determinable, or not severe. But the Court cannot make this inference. The ALJ has a responsibility "to adequately explain her reasoning in making the findings on which [her] ultimate decision rests, and in doing so must address all pertinent evidence." *Gonzalez v. Berryhill*, No. 3:16-cv-1830-BN, 2017 WL 3492215, at *6 (N.D. Tex. August 17, 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).

Similarly, at step three, the ALJ stated that she "carefully considered the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments" but concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of one of the listed impairments." Dkt. No. 21-1, at 1088. The ALJ specifically analyzed whether Plaintiff's impairments met the criteria of Listing 1.04 for spine disorders, 12.04 for depressive disorders, and 12.06 for anxiety. But, despite recognizing the evidence in the record showing that Plaintiff has a full-scale IQ of 59, demonstrated only a second-grade spelling, math computation, and word reading level, has a history of special education classes, and was given a provisional diagnosis

9

of intellectual disability by the doctor who performed his consultive examination, the ALJ did not evaluate whether Plaintiff was disabled under Listing 12.05.

Listing 12.05B, the listing for intellectual disorder, requires the claimant to show significantly subaverage general intellectual functioning evidenced by "[a] full scale (or comparable) IQ score of 70 of below on an individually administered standardized test of general intelligence." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Here, Plaintiff has submitted a medical report showing the uncontested results of a WAIS-IV test showing a full-scale IQ of 59. Dkt. No. 21-1, at 1088.

Listing 12.05B also requires the claimant to show significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: the ability to understand, remember, or apply information; interact with others, concentrate, persist, or maintain pace; or adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Dr. Morris, the doctor who administered Plaintiff's mental status examination, noted in his medical report that Plaintiff would "have difficulties understanding, carrying out, and remember one-and two-step instructions, as well as complex instructions. He is limited in his ability to sustain concentration and persist in work related activity at a reasonable pace. He has limited interest in maintaining social interaction with supervisors, co-workers, and the public. He is unable to deal with normal pressures in a competitive work setting." Dkt. No. 21-1, at 1863. Dr. Morris further stated he believed that Plaintiff "is not able to manage benefits in his own interest" and that he "does not understand the meaning of filing for benefits." *Id*. Finally, Dr. Morris

10

noted that Plaintiff had "moderate" impairment in his ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions, and "marked" impairment in his ability to understand and remember complex instructions, carry out complex instructions, and make judgements on complex work-related decisions. *Id*.

Finally, 12.05B requires the claimant to show some evidence of manifestation of the intellectual disorder before age 22. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Here, Plaintiff testified that he was enrolled in special education classes throughout his time in school, and he submitted school records in support of his testimony. *See* Dkt. 21-1, at 1184-85, 1679-82. Thus, absent some explanation from the ALJ to the contrary, Plaintiff would appear to have met his burden of demonstrating that he meets the Listing requirements for 12.05B, but the ALJ neither evaluated Plaintiff's intellectual deficit under the most closely related Listing, nor discussed whether it combined with other identified impairments to meet the criteria of other Listings. Neither did the ALJ mention, or give any indication that she considered the impact of, Plaintiff's intellectual functioning deficit in her determination of his residual functional capacity (RFC) later in step three.

In contending that the ALJ's step three determination was supported by substantial evidence, the Commissioner makes what amounts to a harmless error argument. The Commissioner points out that the ALJ assessed that Plaintiff did not satisfy the "paragraph B" criteria because he had only two mild limitations (interacting with others; and adapting or managing himself) and two moderate

11

limitations (understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace) and thus did not establish the adaptive functioning deficit required to meet Listings 12.04 or 12.06. Because establishing an intellectual disorder under Listing 12.05B requires the same analysis, the Commissioner argues that, although the ALJ did not explicitly analyze Plaintiff's impairments under Listing 12.05, Plaintiff was not prejudiced by this decision because the ALJ would have similarly determined Plaintiff did not meet the adaptive functioning prong.

But this Court is not permitted to speculate what decision the ALJ would have come to had she properly analyzed the severity of Plaintiff's intellectual functioning deficit at step two, or under the relevant Listing at step three. *See Guillen v. Strue*, 584 F.Supp.2d 930, 936 (W.D. Tex. 2008) ("The Court will not speculate that the ALJ would reach the same conclusion in this case based on different evidence."); *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (stating that to assume the ALJ would reach a certain result on remand is speculation beyond the scope of review). And, even if the Commissioner is correct that the ALJ would have still determined that Plaintiff did not meet the adaptive functioning prong of any mental disorder listing, the ALJ would nonetheless still be required to proceed to determining Plaintiff's RFC, taking into account the impact of his intellectual functioning deficit on his ability to work. See *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ is "required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

The ALJ's RFC determination would, conceivably, have been different had she considered the limitations Plaintiff faces due to his intellectual functioning deficit. This, in turn, could "have effected the jobs available at step five of the sequential evaluation process, and [Plaintiff] may have been found disabled." *Kneeland v. Berryhill*, 850 F.3d 749, 761-62 (5th Cir. 2017).

Thus, the ALJ's failure to conduct the severity analysis of Plaintiff's intellectual functioning deficit at step two, and her subsequent failure consider its impact at step three, prejudiced Plaintiff. Accordingly, all of Plaintiff's mental and physical impairments must be considered in the ALJ's sequential analysis on remand.

## II. The RFC determination is not supported by substantial evidence

Second – and in addition to improperly excluding consideration of Plaintiff's intellectual functioning deficit – Plaintiff contends that the ALJ's mental RFC determination is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ failed to identify any medical evidence on which she based her findings and instead improperly relied on her own lay interpretation of the medical evidence in determining Plaintiff's mental RFC.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC refers to the most that a claimant is able to do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether a claimant can work. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4). Generally, an ALJ should request a medical source statement that describes the types of work a claimant can still perform. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). But the absence of such a statement is not reversible error

> if the ALJ's decision is nevertheless supported by substantial evidence. *See id.* Reversal is warranted only if the claimant shows that he was prejudiced. *See id.*
>      In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *See id.* The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem but did not clearly establish the effect that condition had on his ability to work. *See id.* The court thus remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *See id.* at 557-58. The court rejected the Commissioner's attempt to argue that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n. 27.

*Johnson v. Astrue*, No. 3:12-CV-4175-BK, 2013 WL 3297594, at *4 (N.D. Tex. July 1, 2013).

Here, the ALJ apparently attempted to account for Plaintiff's depression and anxiety by limiting Plaintiff to "performing detailed, but not complex tasks and instructions, in an environment that involves few, if any, workplace changes, and interaction with the public is limited to occasional." Dkt. No. 21-1, at 1090. But the record contains little medical evidence to support the conclusion that Plaintiff can perform detailed work despite his severe mental impairments. The only medical evaluations that assess the effect of Plaintiff's mental impairments are a 2011 Global Assessment of Functioning (GAF) score of 41 (representing "serious symptoms or any serious impairment in social, occupational, or school functioning) and Dr. Morris's 2018 consultive examination, wherein Plaintiff received diagnoses of depressive disorder and mild intellectual disorder. The ALJ largely rejected both of these examinations, assigning them, respectively, "little weight" and [v]ery little weight" in her mental RFC determination. "While the ALJ may choose to reject [the GAF score

14

and Dr. Morris's] opinions, she cannot then independently decide the effects of [Plaintiff's] mental impairments on his ability to perform work-related activities, as that is expressly prohibited by *Ripley*." *Johnson*, at *5.

After discounting the results of Plaintiff's only mental functioning evaluations, the ALJ's only stated basis for her mental RFC finding is her observation that Plaintiff's "treatment for depression and anxiety has been minimal and conservative," which she concludes "suggests that symptoms are not as debilitating as reflected in [Dr. Morris's] opinion." Dkt. No. 21-1, at 1093. While the ALJ is entitled to, and indeed must, consider all relevant evidence in the record, including medical records and testimony from treating physicians and the claimant himself, the ALJ does not point to any conflicting medical evidence that supports her conclusion that Plaintiff can perform detailed work given his mental impairments. And so the ALJ impermissibly relied on her own medical interpretation of Plaintiff's treatment and work history in determining his mental RFC.

"An ALJ cannot derive a claimant's RFC without the support of a medical opinion regarding the effect of the [claimant's] impairment on [his] ability to work." *Rayner v. Berryhill*, No. 3:17-cv-2137, 2018 WL 4112872, at *4 (N.D. Tex. July 30, 2018); *Williams v. Astrue*, 355 Fed. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining RFC). Where an ALJ expressly rejects the opinions of treating or examining physicians, the ALJ must obtain an expert medical

15

opinion about the types of work tasks the claimant can perform given his impairments. *See Ripley*, 67 F.3d at 557.

Because there is not substantial evidence supporting the ALJ's mental RFC finding that Plaintiff can perform detailed work, the Court should reverse and remand for further proceedings.

### III. Existing jobs in the national economy

Plaintiff also contests the ALJ's determination at step five that Plaintiff is not disabled because there exists a significant number of jobs in the national economy which he could perform. Specifically, Plaintiff asserts that the jobs the ALJ identified at step five, relying on vocational expert testimony, do not in fact exist in significant numbers.

The Fifth Circuit has not established a bright line rule on what constitutes a sufficiently significant number of jobs existing in the national economy, and therefore the step five determination of numerical significance is made on a case-by-case basis. *See Mercer v. Halter*, No. Civ.A.4:00-CV-1257-BE, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (noting that the question of whether work exists in significant numbers "has been left to the trial judge's common sense in the face of the statutory language and a particular fact situation" and noting a variety of different numbers of jobs that have been found to be a "significant number" under such test); *Davis v. Astrue*, No. 3:06-cv-883-B, 2008 WL 517238, *3-*6 (N.D. Tex. Feb 28, 2008) (finding that the "significant numbers" decision is a factual determination). And the ALJ's

determination of what, if any, existing jobs the claimant can perform relies on the ALJ correctly determining the claimant's RFC at step three.

Because the Court should remand for further consideration to address errors at steps two and three that necessarily have affected the ALJ's ability to correctly analyze whether there are jobs Plaintiff could perform, the Court should decline to rule on Plaintiff's step five challenge.

## Conclusion

For the reasons explained above, the Court should reverse the hearing decision and remand this case to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions and recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 13, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE